IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 18-cv-03338-STV

VICTORIA DAWN WRIGHT,

    Plaintiff,

v.

CDOC-DWCF SERGEANT ROBERT J. GESS,

    Defendants.
_____

**ORDER**
_____

Magistrate Judge Scott T. Varholak

    This matter comes before the Court on Sergeant Robert J. Gess' Motion to Dismiss [#46] (the "Motion"). The parties have consented to proceed before the undersigned United States Magistrate Judge for all proceedings, including entry of a final judgment. [##48, 49] This Court has carefully considered the Motion and related briefing, the case file, and the applicable case law, and has determined that oral argument would not materially assist in the disposition of the Motion. For the following reasons, the Motion is **DENIED**.

**I.    BACKGROUND[1]**

    On September 25, 2018, Plaintiff was a Colorado Department of Corrections ("CDOC") inmate housed at the Denver Women's Correctional Facility ("DWCF"). [#16

---

[1] The facts are drawn from the allegations in Plaintiff's Complaint [#16], which must be taken as true when considering a motion to dismiss for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6). *Wilson v. Montano*, 715 F.3d 847, 850 n.1 (10th Cir. 2013) (citing *Brown v. Montoya*, 662 F.3d 1152, 1162 (10th Cir. 2011)).

1

at 14] On that date, Correctional Officer Elias Lopez reported to Sergeant Shirley Dockery that Plaintiff was "talking shit." [*Id.*] Sergeant Dockery confronted Plaintiff about the allegation and Plaintiff asked to speak to Sergeant Dockery's supervisor. [*Id.*] In response, Sergeant Dockery unholstered her taser, waived the taser around, and told Plaintiff that she could not speak to a lieutenant or a captain. [*Id.*]

Meanwhile, Sergeant Robert J. Gess asked Plaintiff to comply with being handcuffed so that he could transport her to speak with Sergeant Dockery's supervisor. [*Id.* at 15] Sergeant Dockery told Sergeant Gess that Plaintiff was not going to speak to a lieutenant or captain and ordered Sergeant Gess to discontinue the escort. [*Id.*] As Sergeant Gess was attempting to maneuver Plaintiff, Plaintiff began to fall. [*Id.*] Sergeant Gess then "threw Plaintiff [the] remainder of [the] way onto [the] concrete floor." [*Id.*] As a result, Plaintiff sustained two lacerations. [*Id.*] She needed to be transported to the emergency room at Denver Health where her lacerations required a total of ten stitches. [*Id.*]

On December 26, 2018, Plaintiff, proceeding pro se, initiated the instant action. [#1] On March 18, 2019, Plaintiff filed her Amended Complaint. [#16] The Amended Complaint brought several causes of action against numerous defendants. [*Id.*] On March 29, 2019, Senior United States District Judge Lewis T. Babcock dismissed all of Plaintiff's claims except for an excessive force claim against Sergeant Gess. [#17] On June 27, 2019, Sergeant Gess moved to dismiss that sole remaining claim. [#46] Plaintiff responded to the Motion [#53], Sergeant Gess replied [#59], and Plaintiff filed a surreply [#68].

## II.   STANDARD OF REVIEW

Sergeant Gess moves to dismiss pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).  [*See generally* #46]  Federal Rule of Civil Procedure 12(b)(1) empowers a court to dismiss a complaint for "lack of subject-matter jurisdiction."  Dismissal under Rule 12(b)(1) is not a judgment on the merits of a plaintiff's case, but only a determination that the court lacks authority to adjudicate the matter.  *See Castaneda v. INS*, 23 F.3d 1576, 1580 (10th Cir. 1994) (recognizing federal courts are courts of limited jurisdiction and may only exercise jurisdiction when specifically authorized to do so).  A court lacking jurisdiction "must dismiss the cause at any stage of the proceeding in which it becomes apparent that jurisdiction is lacking."  *Basso v. Utah Power & Light Co.*, 495 F.2d 906, 909 (10th Cir. 1974).

Under Federal Rule of Civil Procedure 12(b)(6), a court may dismiss a complaint for "failure to state a claim upon which relief can be granted."  In deciding a motion under Rule 12(b)(6), a court must "accept as true all well-pleaded factual allegations . . . and view these allegations in the light most favorable to the plaintiff."  *Casanova v. Ulibarri*, 595 F.3d 1120, 1124 (10th Cir. 2010) (quoting *Smith v. United States*, 561 F.3d 1090, 1098 (10th Cir. 2009)).  Nonetheless, a plaintiff may not rely on mere labels or conclusions, "and a formulaic recitation of the elements of a cause of action will not do."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570).  Plausibility refers "to the scope of the allegations in a complaint: if they are so general that they encompass a wide

swath of conduct, much of it innocent, then the plaintiffs 'have not nudged their claims across the line from conceivable to plausible.'" *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008) (quoting *Twombly*, 550 U.S. at 570). "The burden is on the plaintiff to frame a 'complaint with enough factual matter (taken as true) to suggest' that he or she is entitled to relief." *Id.* (quoting *Twombly,* 550 U.S. at 556). The ultimate duty of the court is to "determine whether the complaint sufficiently alleges facts supporting all the elements necessary to establish an entitlement to relief under the legal theory proposed." *Forest Guardians v. Forsgren*, 478 F.3d 1149, 1160 (10th Cir. 2007).

"A pro se litigant's pleadings are to be construed liberally and held to a less stringent standard than formal pleadings drafted by lawyers." *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991) (citing *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972)). "The *Haines* rule applies to all proceedings involving a pro se litigant." *Id.* at 1110 n.3. The Court, however, cannot be a pro se litigant's advocate. *See Yang v. Archuleta*, 525 F.3d 925, 927 n.1 (10th Cir. 2008).

### III.   ANALYSIS

Sergeant Gess advances three arguments in support of his Motion. First, he argues that Plaintiff has failed to exhaust her administrative remedies. [#46 at 4-9] Second, he contends that the Amended Complaint fails to state a claim upon which relief can be granted. [*Id.* at 9-14] Finally, he claims that he is entitled to qualified immunity. [*Id.* at 15-16] The Court addresses each argument below.

## A. Exhaustion of administrative remedies

The Prison Litigation Reform Act ("PLRA") directs that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). The exhaustion requirement is mandatory. *Ross v. Blake*, 136 S. Ct. 1850, 1856 (2016); *Porter v. Nussle*, 534 U.S. 516, 524 (2002). But, while the PLRA requires exhaustion of remedies, it only requires exhaustion of "available" remedies. *Ross*, 136 S. Ct. at 1858-60; *Little v. Jones*, 607 F.3d 1245, 1250 (10th Cir. 2010). An administrative procedure is unavailable when "it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates." *Ross*, 136 S. Ct. at 1859. Similarly, "an administrative scheme might be so opaque that it becomes, practically speaking, incapable of use." *Id.* Finally, an administrative remedy might be unavailable "when prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Id.*

Sergeant Gess argues that the Court should dismiss the Amended Complaint because Plaintiff failed to exhaust her administrative remedies. [#46 at 4-9] Because failure to exhaust administrative remedies is an affirmative defense under the PLRA, "inmates are not required to specially plead or demonstrate exhaustion in their complaints." *Jones v. Bock*, 549 U.S. 199, 216 (2007). Indeed, the Tenth Circuit has cautioned that "only in rare cases will a district court be able to conclude from the face of the complaint that a prisoner has not exhausted his administrative remedies and that he is without a valid excuse." *Aquilar-Avellaveda v. Terrell*, 478 F.3d 1223, 1225 (10th Cir.

2007).  Here, Plaintiff indicates in her Amended Complaint that she has exhausted her administrative remedies [#16 at 26], and the Court cannot conclude otherwise from the face of the Amended Complaint.  Accordingly, the Court will not dismiss the Amended Complaint for failure to exhaust administrative remedies.  *Ferguson v. Clifton*, No. 1:18-cv-00921-CMA-SKC, 2019 WL 983491, at *7 (D. Colo. Feb. 7, 2019) ("Because [plaintiff] has indicated in his Amended Complaint that he exhausted available remedies, [defendants'] challenge in this regard is premature, at best."), *report and recommendation adopted*, 2019 WL 979014 (D. Colo. Feb. 28, 2019); *Powell v. Wilner*, No. 06-cv-00545-WYD-MEH, 2009 WL 840756, at *4, *7 (D. Colo. Mar. 30, 2009) (refusing to dismiss complaint for failure to exhaust administrative remedies where such failure was not clear from the face of the complaint).

Rather than relying on the face of Plaintiff's Amended Complaint, Sergeant Gess cites to an affidavit from Tony DeCesaro, the Step 3 Grievance Officer at the CDOC.  [#46 at 6-7]  This affidavit, however, was not referenced in Plaintiff's Amended Complaint.  [*See generally* #16]  Thus, to consider the affidavit, the Court would need to convert the Motion into a motion for summary judgment.  *Greer v. Smith*, 59 F. App'x 491, 492 (3d Cir. 2003) (finding district court erred in considering affidavit submitted with motion to dismiss for failure to exhaust PLRA remedies); *Baker v. Meek*, No. 15-cv-0244-RBJ-NYW, 2015 WL 10012984, at *3 (D. Colo. Dec. 31, 2015) (treating motion to dismiss as motion for summary judgment, after giving notice to plaintiff, in order to consider defendant's affidavit on exhaustion), *report and recommendation adopted*, 2016 WL 471369 (D. Colo. Feb. 8, 2016).  And, while "courts regularly convert motions to dismiss to motions for summary judgment to analyze exhaustion," *Walker v. Firman*, No. 16-cv-

6

02221-RBJ-MEH, 2017 WL 4652015, at *5 (D. Colo. Oct. 17, 2017), *report and recommendation adopted*, 2017 WL 6350204 (D. Colo. Dec. 13, 2017), Sergeant Gess has expressly requested that the Court not convert the Motion into a motion for summary judgment here [#46 at 7].

Even if the Court were to convert the Motion into a motion for summary judgment, it is far from clear that Sergeant Gess would prevail on his exhaustion defense. Again, Sergeant Gess relies on Mr. DeCesaro's affidavit, in which he declares that he reviewed CDOC's records of grievances and Plaintiff did not file a grievance related to the September 25, 2018 excessive force claim. [*Id.* at 6; #46-1] But, Plaintiff has submitted documents purporting to be grievance forms related to the September 25 incident. [#53-1 at 8-11] Though Sergeant Gess challenges the authenticity of those documents [#59 at 5], he has not pointed the Court to any authority that would allow the Court to simply accept his claims of inauthenticity over Plaintiff's claims that the documents are authentic. Accordingly, Sergeant Gess' Motion is **DENIED** to the extent it argues that Plaintiff has failed to exhaust her administrative remedies.

### B. Failure to State a Claim and Qualified Immunity

Alternatively, Sergeant Gess argues that he is entitled to qualified immunity because his actions did not violate clearly established law.[2] [#46 at 15-16] "The doctrine of qualified immunity protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231

---

[2] Sergeant Gess also argues that Plaintiff has failed to state a plausible excessive force claim. [#46 at 9-14] The Court addresses that argument when assessing the first prong of the qualified immunity analysis.

(2009) (quotation omitted). Once the defense of qualified immunity has been raised, "the onus is on the plaintiff to demonstrate '(1) that the official violated a statutory or constitutional right, *and* (2) that the right was "clearly established" at the time of the challenged conduct.'" *Quinn v. Young*, 780 F.3d 998, 1004 (10th Cir. 2015) (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011)).

"To be clearly established, a legal principle must have a sufficiently clear foundation in then-existing precedent" such that it is "settled law." *District of Columbia v. Wesby*, 138 S. Ct. 577, 589 (2018). The Supreme Court has "not yet decided what precedents—other than [its] own—qualify as controlling authority for purposes of qualified immunity." *Id.* at 591 n.8. The Tenth Circuit, however, has stated that "[o]rdinarily this standard requires either that there is a Supreme Court or Tenth Circuit decision on point, or that the 'clearly established weight of authority from other courts [has] found the law to be as the plaintiff maintains.'" *Patel v. Hall*, 849 F.3d 970, 980 (10th Cir. 2017) (quoting *Klen v. City of Loveland*, 661 F.3d 498, 511 (10th Cir. 2011)).

The Supreme Court has "repeatedly stressed that courts must not define clearly established law at a high level of generality, since doing so avoids the crucial question whether the official acted reasonably in the particular circumstances that he or she faced." *Wesby*, 138 S. Ct. at 590 (quotation omitted). Nonetheless, the Supreme Court has made clear that it "do[es] not require a case directly on point, [provided] existing precedent . . . placed the statutory or constitutional question beyond debate." *al-Kidd*, 563 U.S. at 741. The Tenth Circuit has explained the "clearly established" prong of the qualified immunity analysis as follows:

> A clearly established right is one that is sufficiently clear that every reasonable official would have understood that what he is doing violates

8

that right. Although plaintiffs can overcome a qualified-immunity defense without a favorable case directly on point, existing precedent must have placed the statutory or constitutional question beyond debate. The dispositive question is whether the violative nature of the *particular conduct* is clearly established . . . . Qualified immunity protects all but the plainly incompetent or those who knowingly violate the law.

*Aldaba v. Pickens*, 844 F.3d 870, 877 (10th Cir. 2016) (quotations and citations omitted). With these principles in mind, the Court turns to Plaintiff's excessive force claim.

### 1. The Constitutional Violation

The Eighth Amendment to the United States Constitution protects a prisoner's right to "humane conditions of confinement guided by 'contemporary standards of decency.'" *Penrod v. Zavaras*, 94 F.3d 1399, 1405 (10th Cir. 1996) (quoting *Estelle v. Gamble*, 429 U.S. 97, 103 (1976)). As part of this guarantee to humane conditions, the Eighth Amendment proscribes cruel and unusual punishment, which is defined as the "unnecessary and wanton infliction of pain." *Hudson v. McMillian*, 503 U.S. 1, 5 (1992) (quoting *Whitley v. Albers*, 475 U.S. 312, 320 (1986)). In assessing an Eighth Amendment excessive force claim, the "core judicial inquiry is . . . whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Id.* at 7.

Ordinarily, an excessive force claim involves two prongs. *Smith v. Cochran*, 339 F.3d 1205, 1212 (10th Cir. 2003). The "objective prong . . . asks 'if the alleged wrongdoing was objectively harmful enough to establish a constitutional violation.'" *Id.* (quoting *Giron v. Corr. Corp. of Am.*, 191 F.3d 1281, 1289 (10th Cir. 1999)). The subjective prong, on the other hand, requires "the plaintiff [to] show that 'the officials act[ed] with a sufficiently culpable state of mind.'" *Id.* (second alteration in original).

"The objective component of an excessive force claim is 'contextual and responsive to contemporary standards of decency.'" *Id.* (quoting *Hudson v. McMillian*, 503 U.S. 1, 8 (1992)). "[N]ot every malevolent touch by a prison guard gives rise to a federal cause of action" and "[t]he extent of injury may . . . provide some indication of the amount of force applied." *Wilkins v. Gaddy*, 559 U.S. 34, 37 (2010) (quotation omitted). Nonetheless, "[w]hen prison officials maliciously and sadistically use force to cause harm . . . contemporary standards of decency always are violated." *Id.* (*quoting Hudson*, 503 U.S. at 9).

The Court concludes that Plaintiff's allegations satisfy the objective component of an excessive force claim. Though Plaintiff was perhaps being disrespectful to the prison guards, the Amended Complaint, liberally construed, indicates that Plaintiff was compliant with Sergeant Gess' commands. [#16 at 15 (indicating that Sergeant Gess asked Plaintiff to comply with being handcuffed and while Sergeant Gess was positioned behind Plaintiff as part of the handcuffing process, Plaintiff fell)] *See also Nosewicz v. Janosko*, 754 F. App'x 725, 733 (10th Cir. 2018) (concluding that inmate was not actively resisting, despite becoming progressively angrier and refusing a lawful command) Without any active resistance by Plaintiff, Sergeant Gess allegedly shoved Plaintiff to the floor with enough force to cause two lacerations requiring ten stitches. [#16 at 15] Liberally construing the Amended Complaint, Sergeant Gess took this action when Plaintiff was either handcuffed, or had her hands behind her back preparing to be handcuffed, and thus was unable to protect herself from the fall. The Court concludes that such actions, accepted as true, satisfy the objective component of an excessive force claim. *See Nosewicz*, 754 F. App'x at 734 (finding while inmate's irate and disruptive behavior posed a potential

threat, such behavior on its own did not justify hitting inmate's head into the wall and striking inmate's chest); *United States v. Golden*, 671 F.2d 369, 370-71 (10th Cir. 1982) (upholding excessive force verdict where officer hit plaintiff with a flashlight causing injuries that required eight stitches); *Long v. Morris*, 485 F. Supp. 2d 1247, 1250-52 (D. Kan. 2017) (denying prison guard summary judgment on excessive force claim where facts viewed in the light most favorable to inmate showed inmate verbally challenged guard and resisted commands, but did not make an aggressive move to the guard, was in restraints, and guard threw inmate to the floor, causing inmate to suffer a separated clavicle and a contusion requiring eight stitches).

The Court likewise concludes that Plaintiff has sufficiently alleged the subjective component of her excessive force claim. "An official has a culpable mind state if he uses force 'maliciously and sadistically for the very purpose of causing harm,' rather than 'in a good faith effort to maintain or restore discipline.'" *Redmond v. Crowther*, 882 F.3d 927, 936 (10th Cir. 2018) (quoting *Whitley v. Albers*, 475 U.S. 312, 320-21 (1986)). In other words, "[w]here no legitimate penological purpose can be inferred from a prison employee's alleged conduct . . ., the conduct itself constitutes sufficient evidence that force was used maliciously and sadistically for the very purpose of causing harm." *DeSpain v. Uphoff*, 264 F.3d 965, 978 (10th Cir. 2001) (quotations omitted)). Again, the Amended Complaint alleges that Sergeant Gess "threw Plaintiff . . . onto [the] concrete floor." [#16 at 15] Sergeant Gess took these actions despite the fact that Plaintiff was not resisting and appeared compliant with Sergeant Gess' attempts to handcuff her. [*Id.*] If true, a reasonable factfinder could conclude that Sergeant Gess acted maliciously and sadistically for the purpose of causing harm. *See, e.g., Smith v. Nichols*, No. 09-cv-

01139-MSK-BNB, 2011 WL 996871, at *6 (D. Colo. Mar. 18, 2011) ("To the extent there was no justification for Sergeant Nichols' actions, an inference that they were accompanied by a 'malicious and sadistic' motivation can be made." (citing *Smith*, 339 F.3d at 1213)). Accordingly, the Court concludes that Plaintiff has adequately stated both elements of an excessive force claim. Accordingly, Sergeant Gess' Motion is **DENIED** to the extent it argues that Plaintiff has failed to plausibly allege a constitutional violation.

### 2. Clearly Established Law

Having concluded that the Amended Complaint has plausibly alleged an excessive force claim, the Court turns to whether the law was clearly established at the time of Sergeant Gess' actions. Once again, the Supreme Court has "repeatedly stressed that courts must not define clearly established law at a high level of generality, since doing so avoids the crucial question whether the official acted reasonably in the particular circumstances that he or she faced." *Wesby*, 138 S. Ct. at 590 (quotation omitted). Nonetheless, the Supreme Court has made clear that it "do[es] not require a case directly on point, [provided] existing precedent . . . placed the statutory or constitutional question beyond debate." *al-Kidd*, 563 U.S. at 741.

Here, Plaintiff has alleged that Sergeant Gess unnecessarily inflicted pain on her, sufficient to require ten stitches, despite the fact that she was not resisting, and either handcuffed or about to be handcuffed. The Northern District of Oklahoma recently addressed a similar scenario. *Ali v. Lambert*, 384 F. Supp. 3d 1321 (N.D. Okla. 2019). In addressing whether it was clearly established that a prison guard could not painfully manipulate the arms of a non-resisting and handcuffed inmate, the *Ali* Court reasoned:

> [S]ome cases [plaintiff] cites appear to involve sufficiently similar facts and, thus, support his contention that [defendant's] alleged actions of

unnecessarily inflicting pain on a non-resisting, handcuffed prisoner, without provocation, violated clearly established law. *See e.g., Giles v. Kearney*, 571 F.3d 318, 327 (3d Cir. 2009) ("No reasonable officer could agree that striking and kicking a subdued, nonresisting inmate in the side, with force enough to cause a broken rib and collapsed lung, was reasonable or necessary under established law"); *Sims v. Artuz*, 230 F.3d 14, 22 (2d Cir. 2000) (finding inmate stated three plausible Eighth Amendment excessive-force claims when complaint alleged (1) that "while handcuffed [he] was punched in the ribs, collar, arm, and skull" by three officers, (2) that while "his arms were shackled" two officers "punched him in the face four times," and (3) "several defendants punched and kicked [him] in the rib cage, skull, knee cap, backbone, sacrum, spine, collar bone, and teeth, and pulled him by his penis," and that "each of the alleged beatings . . . was administered maliciously and sadistically, and without need or provocation"); *Griffin v. Crippen*, 193 F.3d 89, 91-92 (2d Cir. 1999) (concluding that dismissal of "weak" excessive-force claim was inappropriate when inmate alleged prison guards assaulted him while he was handcuffed and "there [were] genuine issues of material fact concerning what transpired after appellate was handcuffed and whether guards maliciously used force against him"); *Miller v. Glanz*, 948 F.2d 1562, 1564, 1567 (10th Cir. 1991) (holding allegations sufficient to state an Eighth Amendment claim where officers kicked, beat, and choked a prisoner who was handcuffed behind his back and whose ankles were also restrained); *see also Thompson v. Commonwealth of Virginia*, 878 F.3d 89, 105 (4th Cir. 2017) (discussing cases decided before April 8, 2010, and concluding: "As is apparent from the case law of eleven federal courts of appeals, the Eighth Amendment protection against the malicious and sadistic infliction of pain and suffering applies in a diverse range of factual scenarios. That unifying thread provides fair notice to prison officials that they cannot, no matter their creativity, maliciously harm a prisoner on a whim or for reasons unrelated to the government's interest in maintaining order. That principle applies with particular clarity to cases such as this one, where the victim is restrained, compliant, and incapable of resisting or protecting himself, and otherwise presents no physical threat in any way."). Accepting as true [plaintiff's] allegations that [defendant] acted deliberately and maliciously with the intent to cause [plaintiff] pain by manipulating [plaintiff's] arms while [plaintiff] was handcuffed and offering no resistance . . . these cases support [plaintiff's] assertion that the law governing [defendant's] alleged conduct was clearly established.

*Id.* at 1327–28. The Court finds this analysis of caselaw from this Circuit and others persuasive and equally applicable to the facts of this case. *See also Nosewicz*, 754 F. App'x at 733-34 (reversing grant of summary judgment based upon qualified immunity where angry but non-resisting inmate was slammed into a cinderblock wall, causing

13

fractured ribs and lacerated elbow); *accord Perea v. Baca*, 817 F.3d 1198, 1204-05 (10th Cir. 2016) ("[I]t is likewise clearly established that officers may not continue to use force against a suspect who is effectively subdued." (collecting cases)); *Hayenga v. Garth*, No. 18-cv-02038-KLM, 2019 WL 2471086, at *7 (D. Colo. June 13, 2019) (same). Thus, the Court concludes that the law was clearly established at the time of Sergeant Gess' actions that he could not, unprovoked, shove the non-resisting Plaintiff to the ground, from behind and while she was handcuffed or being handcuffed, with such force as to require her transport to the emergency room for ten stitches. Accordingly, Sergeant Gess' Motion is **DENIED** to the extent it relies upon the doctrine of qualified immunity.

### C. Appointment of Counsel

Plaintiff has previously requested the appointment of counsel [#4], which was denied as premature [#9]. Having concluded above that Plaintiff's Amended Complaint has stated a claim for relief, the Court now re-evaluates the request for counsel in light of D.C.COLO.LAttyR 15 of the U.S. District Court's Local Rules. Specifically, the Court is satisfied that the following factors and considerations have been met:

1) the nature and complexity of the action;

2) the potential merit of the claims or defenses of the unrepresented parties;

3) the demonstrated inability of the unrepresented party to retain an attorney by other means; and

4) the degree to which the interests of justice, including the benefits to the Court, will be served by appointment of counsel.

While the case may not be overly complex, it does involve issues of qualified immunity and may involve medical records. As detailed above, if the allegations in the Amended Complaint are true, the excessive force claim may have merit. Plaintiff has also

14

demonstrated some difficulty litigating this case, including based upon her incarceration and limited access to legal resources. Considering these factors, the Court will appoint counsel to represent Plaintiff.

## IV. CONCLUSION

For the foregoing reasons:

(1) Defendants' Motion [#46] is **DENIED**;

(2) The Clerk of the Court shall select, notify, and appoint counsel from the Civil Pro Bono Panel to represent Plaintiff in this civil matter; and

(3) Plaintiff is **ADVISED** that there is no guarantee that a member of the Civil Pro Bono Panel will undertake representation in this case, and Plaintiff remains responsible for all scheduled matters, including hearings, depositions and written discovery, motions, and trial, and for complying with the Federal Rules of Civil Procedure and the Local Rules of the Court.

DATED: September 18, 2019                    BY THE COURT:

                      s/Scott T. Varholak
                      United States Magistrate Judge